IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

JAMES MICHAEL MCBRIDE                                                                    PLAINTIFF

VS.                                                              CIVIL ACTION NO.  2:05CV2148KS-MTP

CNA INSURANCE COMPANY A/K/A
CONTINENTAL CASUALTY COMPANY                                              DEFENDANT

## MEMORANDUM OPINION AND ORDER

This cause is before the court on a motion for summary judgment filed by defendant Continental Casualty Company ("Continental").[1]  Plaintiff has not responded to the motion.[2] From its review of all matters made a part of the record of this case as well as applicable law, and being thus fully advised in the premises, the court FINDS that defendant's motion for summary judgment is well-taken and should be granted.  The court specifically finds as follows:

## FACTUAL BACKGROUND[3]

---

[1] Continental was incorrectly referred to in plaintiff's complaint as CNA Insurance Company a/k/a Continental Casualty Company.

[2] On September 25, 2006, plaintiff requested an extension of time to respond to the motion.  That request was granted by the court, and plaintiff's deadline for responding was extended until October 29, 2006.  On November 9, 2006, when plaintiff had failed to respond to the motion, and with the pre-trial conference in this case scheduled for November 17, 2006, the court entered an order that plaintiff show cause by November 13, 2006 why the motion should not be considered by the court without response.  Plaintiff has not responded to the order to show cause and has not responded to the motion.

[3] These facts are taken from the Policy and Mr. McBride's claim file, duly authenticated by the Declaration of Mary A. Shimko, the Declaration of Dena Kopszywa, and Judge David Bramlette's Memorandum Opinion and Order granting Continental's motion to dismiss in a prior lawsuit brought by plaintiff against Continental under the Policy, styled *McBride v. Continental Casualty Company*, Civ No. 2:04cv69BrSu (S.D. Miss. Aug. 31, 2004), attached as exhibits to defendant's motion for summary judgment.

1

Plaintiff, James Michael McBride, was employed by Mississippi Power Company ("MPC") as a substation electrician from December 17, 1979 until September 5, 1994. MPC is a subsidiary of Southern Company Services, Inc. ("SCS"). In August of 1986, Mr. McBride hurt his back while lifting a plow on a trenching machine. Mr. McBride then continued to work for MPC until September 5, 1994, after which he claimed he was totally disabled. On October 4, 1994, Mr. McBride had back surgery and as of March 6, 1995, MPC placed Mr. McBride on a leave of absence without pay. Plaintiff never returned to work at MPC thereafter.

Until January 1, 1996, UNUM Life Insurance Company of America provided accidental death and dismemberment ("AD&D") insurance coverage to eligible SCS and MPC employees. On March 6, 1995, after the required six-month waiting period was completed, Mr. McBride began receiving long-term disability benefits under this plan. In January 1, 1996, MPC began offering its eligible employees AD&D insurance through a new provider, defendant Continental. This insurance was funded through a Group Accidental Death and Dismemberment Policy, No. SR-83094160, issued by Continental (the "Policy").[4] The Policy was in effect from January 1, 1996 to January 1, 2001.[5]

An "Insured" is defined in the Policy as "the eligible person whose insurance is in force under the terms of this policy." Eligible persons include "[a]ll active, full-time and permanent

---

[4] Although Continental issued the Policy, Hartford Life Group Insurance Company ("Hartford") subsequently assumed all responsibilities and obligations under the Policy, including the processing and payment of eligible claims. To avoid any confusion, "Continental" will be used in this opinion.

[5] The "Policy Effective Date" is January 1, 1996. Coverage under the Policy ceases for any individual "on the date that this policy is terminated." The Policy was terminated on January 1, 2001.

part time employees...." The effective date of coverage for eligible employees is the "Policy Effective Date" of January 1, 1996, or thereafter for employees who become eligible for coverage after the effective date of the Policy or the date the employee's enrollment card is received by SCS, whichever is later.

A "Permanent Total Disability Benefit" is provided by the Policy "[i]f, because of a covered injury and beginning within 180 days after the date of the accident, the Insured sustains Permanent Total Disability[6]...." The Policy defines "Injury" as "bodily injury caused by an accident which occurs while the Insured Person is covered under this policy and that results, directly and independently of all other causes, in loss covered by this policy."

In order to be eligible for benefits under the Policy, a claimant must submit timely notice of claim and proof of loss. Specifically, the Policy provides that "[w]ritten notice of claim must be given to Us within 20 days after any loss covered under this policy. If notice cannot be given within that time, it must be given as soon as reasonably possible." The Policy further provides that "[w]ritten proof of loss must be given to Us within 90 days after the date of such loss. If it is not reasonably possible to give the proof within 90 days, the claim is not affected if the proof is given as soon as possible. Unless the Insured Person is legally incapacitated, written proof must be given within 1 year of the time it is otherwise due." Finally, there is a time limit within which lawsuits must be filed. The Policy provides: "No action at law or in equity can be brought until after 60 days following the date written proof of loss is given. No action can be brought after 3

---

[6] Under the Policy, "Permanent Total Disability" means a disability which "has, for twelve consecutive months, continuously prevented the Insured from engaging in any occupation for which he or she is or becomes qualified by education, training or experience"; and "is determined [by competent medical authority to be permanent, total and continuous."

years...from the date written proof is required."

On December 31, 2003, prior to submitting a claim for benefits, plaintiff filed suit against Continental in the Circuit Court of First Judicial District of Jones County, Mississippi, asserting claims for breach of contract, bad faith, and physical and mental pain and suffering arising out of permanent total disability benefits he claimed he was entitled to under the Policy ("*McBride I*"). *McBride I* was then removed to the United States District Court for the Southern District of Mississippi. Continental moved to dismiss the Complaint on the ground that plaintiff had failed to exhaust his administrative remedies under ERISA. District Judge David Bramlette granted the motion, and in so doing, concluded that plaintiff's claims were subject to and governed by ERISA, that plaintiff's state law claims were preempted by ERISA, and that plaintiff could therefore only seek relief under ERISA.[7]

While *McBride I* was pending, plaintiff submitted a claim to Continental under the Policy on or about April 30, 2004. According to plaintiff's application, the basis of his disability claim was the back injury he sustained in an accident on or about August 1, 1986. The Employer's Statement accompanying the application indicated that plaintiff had last worked on September 5, 1994. In a Claimant's Statement dated March 27, 1995, plaintiff reported that he had not returned to work since September 12, 1994. Attending Physician's Statements dated March 27, 1995 and December 17, 1997 gave the plaintiff's date of disability as September 12, 1994.

On May 10, 2005, Linda Durrance of Continental notified plaintiff that his claim for a permanent total disability benefit was denied. The bases for Continental's decision were: (1)

---

[7] Judge Bramlette dismissed the suit without prejudice on August 31, 2004, and denied plaintiff's motion for reconsideration on November 10, 2004.

plaintiff was not eligible for coverage under the Policy, because he was not an active full-time employee at the time coverage became effective on January 1, 1996; (2) plaintiff would not have been eligible for coverage since he stopped working for MPC in September 1994 and never returned to work while the Policy was in effect; (3) plaintiff's back injury did not occur while the Policy was in effect; (4) plaintiff was not "permanently totally disabled";[8] and (5) some of the medical conditions upon which plaintiff based his disability were excluded from coverage under the Policy.[9]  Ms. Durrance informed plaintiff that he had the right to appeal Continental's decision within 60 days.  Plaintiff did not file an appeal, but instead filed this lawsuit on November 9, 2005, asserting claims against Continental for compensatory and punitive damages, attorneys fees, interest and costs.

## SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is to be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record which it believes demonstrates the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v.*

---

[8] There were various medical reports in the claim file indicating that Mr. McBride could perform light or sedentary work.

[9] In addition to the back injury, plaintiff had other conditions such as insulin dependent diabetes and mitral valve problems.  Sickness and disease are generally excluded from coverage under the Policy.

*Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Williams v. Adams*, 836 F.2d 958, 960 (5th Cir. 1988). The moving party, however, need not negate the elements of the non-movant's case. *See Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (*citing Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

Once the moving party satisfies its initial burden, the non-movant may not rest on the pleadings, but must "identify specific evidence in the ... record demonstrating that there is a material fact issue concerning the essential elements of its case." *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (citation omitted); *see also Celotex*, 477 U.S. at 322-23; *Anderson*, 477 U.S. at 257. "The moving party need not support its motion with affidavits or other evidence, but to defeat a motion for summary judgment the nonmovant must present evidence sufficient to establish the existence of each element of his claim as to which he will have the burden of proof at trial." *Pavone v. Mississippi Riverboat Amusement Corp.*, 52 F.3d 560, 565 (5th Cir. 1995) (citation omitted).

In analyzing a motion for summary judgment, all evidence must be "construed in the light most favorable to the nonmoving party without weighing the evidence, assessing its probative value, or resolving any factual disputes." *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996) (citation omitted). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in her favor." *Palmer v. BRG, Inc.*, 498 U.S. 46, 49 n.5 (1990) (*quoting Anderson*, 477 U.S. at 255). Nevertheless, "conclusory allegations, speculation and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden." *Douglass*, 79 F.3d at 1429 (citation omitted). Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to her case on which she

bears the burden of proof at trial.  *See Celotex*, 477 U.S. at 322.  "In such situations, there can be 'no genuine issue as to any material fact' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id.* at 322-23.

## ANALYSIS

In *McBride I*, the parties litigated the issues of whether plaintiff's claims against Continental were governed by ERISA, and they also litigated the issue of whether plaintiff's state law claims were preempted by ERISA.  In his Memorandum Opinion and Order granting Continental's motion to dismiss in *McBride I*, Judge Bramlette held that the Policy was governed by ERISA.  Judge Bramlette further held that plaintiff's state law claims for breach of contract, bad faith and physical and mental pain and suffering were preempted by ERISA and that plaintiff could therefore only seek relief under the provisions of ERISA.

The court finds that these holdings have a preclusive effect in this case under the doctrines of res judicata and collateral estoppel.  Res judicata, or claim preclusion, applies where (1) the parties are in privity; (2) a prior judgment was rendered in a court of competent jurisdiction; (3) there was a final judgment on the merits, and (4) the same claim was involved in both actions.  *Petro-Hunt, LLC v. U.S.*, 365 F.3d 385, 395 (5th Cir. 2004), *cert. denied*, 543 U.S. 1034 (2004).  All of these factors are present here: the parties here are the same as in *McBride I*; a prior judgment granting Continental's motion to dismiss was rendered in the District Court for the Southern District of Mississippi, a court of competent jurisdiction; this decision was a final judgment on the merits, as it dismissed plaintiff's case; and the same claims are involved in both actions - a claim for benefits under the Policy, as well as state law claims based on the denial of

benefits under the Policy. Collateral estoppel, or issue preclusion, applies to prevent a party from re-litigating an issue already decided in a prior proceeding if: (1) the issue is identical; (2) the issue was actually litigated; and (3) the determination of the issue in the prior action was a necessary part of the judgment in that action. *Id.* at 397. Again, all of these factors are present in this case: the issues - whether the Policy is governed by ERISA and whether plaintiff's state law claims are preempted by ERISA - are identical; the issues were actually litigated on the motion to dismiss; and the determinations of the issues in the prior action were a necessary part of the judgment granting the motion to dismiss. Therefore, the issue of whether plaintiff's claims are governed and preempted by ERISA has already been litigated and decided in *McBride I* and that decision has preclusive effect here.[10] Thus, plaintiff can only assert claims under ERISA.

ERISA's civil enforcement mechanism, 29 U.S.C. § 1132(a)(1)(B), provides that participant in a plan may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.". For the reasons set forth below the court finds that plaintiff is not entitled to any benefits under ERISA.

First, the court agrees with Continental's argument that plaintiff was not covered under the Policy. The effective date of the Policy was January 1, 1996, or thereafter for employees who become eligible for coverage after the effective date of the Policy or the date the employee's enrollment card is received by SCS, whichever is later. "Eligible" employees are defined as active, full-time and permanent part-time employees. The evidence in the record is undisputed

---

[10] Indeed, plaintiff conceded in his Pre-Discovery Disclosure of Core Information, dated April 3, 2006, that this case is governed by ERISA.

that Mr. McBride stopped working at MPC on or about September 5, 1994, was placed on an unpaid leave of absence as of March 6, 1995, and did not thereafter return to work at MPC. He was not an active employee at the time of the effective date of the Policy, nor at any time thereafter. Therefore, Mr. McBride is not entitled to any benefit under the Policy.

In addition, even assuming *arguendo* that plaintiff was covered under the Policy, plaintiff would still not be entitled to any benefit under the Policy. First, the Policy defines an "injury" as "injury caused by an accident which occurs while the Insured Person is covered under this policy...". It is clear from the record (and, indeed, plaintiff explicitly stated this in his claim for long-term disability benefits) that plaintiff was injured on or about August 1, 1986 when he sustained his back injury, and that he claims to have become disabled by this injury on September 12, 1994. The effective date of the Policy, as discussed above, was January 1, 1996. Since the accident and injury occurred before the effective date of the policy, plaintiff is not entitled to benefits under the Policy. Second, under the Policy permanent total disability benefits are only payable if the claimant becomes disabled "because of a covered injury and beginning within 180 days after the date of the accident." As noted above, plaintiff's injury occurred in August of 1986, but he does not claim to have become disabled until September 12, 1994, over eight years after his injury. Thus, for this reason as well, plaintiff is not entitled to any benefit under the Policy.

The court further notes that plaintiff's claim against Continental is barred because he failed to timely submit notice of claim and proof of loss, and he failed to timely file his lawsuit against Continental. The Policy requires that written notice of claim be given within twenty (20) days after any loss covered under the Policy, and that if it cannot be given within that time, it

must be given as soon as reasonably possible.  The Policy further provides that written proof of loss must be provided within 90 days after date of loss, or as soon as possible if it cannot be given within 90 days, and at any rate, it must be provided within one year of the time it is otherwise due (unless the claimant is legally incapacitated).  Plaintiff submitted his claim and proof of loss on or about April 30, 2004, nearly eighteen years after the accident that caused his injury, nearly ten years after he allegedly became disabled and stopped working at MPC, and over three years after the Policy was cancelled.  This was clearly untimely and therefore Continental is entitled to summary judgment on this basis.  *Goodwin v. Libbey Glass, Inc.*, 176 Fed. Appx. 588, 593 (5th Cir. 2006); *Estate of Bratton v. Nat'l Union Fire Ins. Co.*, 215 F.3d 516, 525 (5th Cir. 2000); *Mississippi v. Richardson*, 817 F.2d 1203, 1207 (5th Cir. 1987) ("Notice given so late that it is 'unreasonable' or that prejudices the insurer bars recovery by the insured....[T]imely notice enables the insurer to investigate a claim against the [insured which may be] covered by the policy; to itself decide whether the claim should be settled without litigation, and, if not, to prepare its defense.") (citations omitted).

In addition, the Policy provides that suit cannot be brought after 3 years from the date written proof is required.[11]   Written proof was required, at most, within one year and 90 days after plaintiff suffered his loss.   At the very latest, therefore, plaintiff should have filed suit by December 12, 1998, four years and ninety days after he became disabled.  Mr. McBride filed suit in *McBride I* on December 31, 2003, over nine years after he became disabled, and filed the instant action on November 9, 2005, over eleven years after he became disabled.  Thus, even

---

[11] Mississippi mandates the following provision in accident and health insurance policies: "No such action shall be brought after the expiration of three (3) years after the time written proof of loss is required to be furnished."  Miss. Code. Ann. § 83-9-5(1)(k).

assuming that plaintiff was covered by the Policy and that he would have been entitled to benefits, he failed to abide by the notice provisions of the Policy and therefore he cannot recover benefits.

Finally, the court also finds that plaintiff has failed to exhaust his administrative remedies. Courts have repeatedly held that failure to exhaust administrative remedies on an ERISA claim - in particular, failure to file an administrative appeal within the terms of the plan- bars a lawsuit on that claim. *See*, *e.g, Cooperative Benefit Administrators, Inc. v. Ogden*, 367 F.3d 323, 336 (5th Cir. 2004); *David v. AIG Life Ins.*, 945 F.Supp. 961, 967-68 (S.D. Miss. 1995). In the May 10, 2005 letter from Hartford denying plaintiff's claim, Ms. Durrance clearly set forth the procedures to be followed in appealing the decision: that Mr. McBride could submit a formal request for reconsideration in writing within 60 days, that if Hartford did not alter its decision the claim would be submitted for a formal appeal review, that a ruling would be issued within 45 days of receipt of the request for reconsideration, and that Mr. McBride would have the right to bring a civil action following an adverse decision on appeal. However, plaintiff did not submit a request for reconsideration or take any other actions to institute an internal appeal of the adverse decision. Rather, plaintiff filed the instant lawsuit. Therefore, summary judgment for defendant is warranted on this basis as well.

As the court has found that plaintiff was not covered by the Policy, that plaintiff is not entitled to any benefit under the policy, that plaintiff failed to timely submit his claim, proof of loss or file this lawsuit, and that plaintiff failed to exhaust his administrative remedies, the court does not need, and thereby declines, to reach defendant's argument that it did not abuse its discretion in denying his claim.

IT IS, THEREFORE, ORDERED AND ADJUDGED that defendant's motion for summary judgment [# **13**] is granted and plaintiff's complaint is dismissed with prejudice.

SO ORDERED and ADJUDGED on this, the 16th day of November, 2006.

           s/ *Keith Starrett*
           UNITED STATES DISTRICT JUDGE